## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF WATERFRONT EMPLOYERS, )<br><br>Plaintiff, )<br>and )<br><br>OLD REPUBLIC INSURANCE COMPANY and ASSOCIATION OF BITUMINOUS CONTRACTORS, INC., )<br><br>Plaintiff-Intervenors, )<br><br>v. )<br><br>ELAINE L. CHAO, in her official capacity as the Secretary of Labor, )<br><br>Defendant. ) | Civil Action No. 07-2250 (RMC) |

### DEFENDANT'S MOTION TO DISMISS

Defendant Elaine L. Chao, Secretary of the Department of Labor, by and through her undersigned counsel, hereby moves the Court to dismiss the above-captioned action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of this motion, the Court is respectfully referred to Defendant's Memorandum in Support of Motion to Dismiss.

Dated: March 25, 2008.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

RICHARD G. LEPLEY
Assistant Branch Director

_/s/ Scott Risner_____
SCOTT RISNER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 514-2395
Fax: (202) 616-8470

Attorneys for Defendant

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF WATERFRONT EMPLOYERS, | ) ) ) | |
| Plaintiff, | ) | |
| and | ) ) | |
| OLD REPUBLIC INSURANCE COMPANY and ASSOCIATION OF BITUMINOUS CONTRACTORS, INC., | ) ) ) ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | Civil Action No. 07-2250 (RMC) |
| ELAINE L. CHAO, in her official capacity as the Secretary of Labor, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.      ADJUDICATION OF LONGSHORE AND BLACK LUNG CLAIMS  . . . . . . 3

    II.     THE CHANGE IN PUBLICATION OF CLAIMANT NAMES  . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.      THE APA DOES NOT ALLOW JUDICIAL REVIEW OF THE
          CLAIMANT NAME CHANGE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.     CHIEF JUDGE VITTONE HAS THE AUTHORITY TO IMPLEMENT
          THE CLAIMANT NAME CHANGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    III.    THE CLAIMANT NAME CHANGE IS AT MOST A PROCEDURAL RULE
          NOT SUBJECT TO APA NOTICE AND COMMENT REQUIREMENTS  . . . 13

          A.     The claimant name change is exempt from the APA's requirements
                of notice-and-comment rulemaking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          B.     A pre-existing procedural rule can be validly amended without
                notice and comment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

               1.     DOL's extensive 1978 rulemaking included both substantive
                      and procedural rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

               2.     DOL did not waive the notice-and-comment exemptions by
                      voluntarily inviting public participation  . . . . . . . . . . . . . . . . . . . 20

          C.     The implementation of the claimant name change was procedurally
                consistent with the LHWCA and the BLBA . . . . . . . . . . . . . . . . . . . . . 22

    IV.    PLAINTIFFS STATE NO VIABLE SUBSTANTIVE CHALLENGE TO
          THE CLAIMANT NAME CHANGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.    The OALJ continues to publish its decisions on the Internet, fulfilling
       DOL's obligations under the Freedom of Information Act . . . . . . . . . . . 23

B.    The claimant name change does not affect the rights of parties under
       the LHWCA and the BLBA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.    Plaintiffs state no actionable constitutional claims . . . . . . . . . . . . . . . . . 26

       1.    The claimant name change does not violate Plaintiffs' due
              process rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

       2.    The First Amendment does not require DOL to publish
              decisions including claimants' full names . . . . . . . . . . . . . . . . . 29

D.    Common law does not require published decisions to include
       claimants' full names . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

iii

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>America Hospital Association v. Bowen</u>,
    834 F.2d 1037 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 17, 18, 22

<u>Association of National Advertisers, Inc. v. FTC</u>,
    617 F.2d 611 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

<u>Ball Memorial Hospital v. Leavitt</u>,
    2006 WL 2714920 (D.D.C. Sept. 22, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

<u>Batterton v. Marshall</u>,
    648 F.2d 694 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 16

<u>Battle v. FAA</u>,
    393 F.3d 1330 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

<u>Bell Atlantic Corp. v. Twombly</u>,
    ___ U.S. ___, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . .  31

<u>Beverly Health & Rehabilitation Services, Inc. v. Thompson</u>,
    223 F. Supp. 2d 73 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 20

<u>Bowen v. Massachusetts</u>,
    487 U.S. 879, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988) . . . . . . . . . . . . . . . . . . . . . . .  9

<u>British Caledonian Airways Ltd. v. Civil Aeronautics Board</u>,
    584 F.2d 982 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

<u>Brock v. Roadway Express, Inc.</u>,
    481 U.S. 252, 107 S. Ct. 1740, 95 L. Ed. 2d 239 (1987) . . . . . . . . . . . . . . . . . . . . . . .  27

<u>Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.</u>,
    467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) . . . . . . . . . . . . . . . . . . . . . . .  11

<u>Chrysler Corp. v. Brown</u>,
    441 U.S. 281, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979) . . . . . . . . . . . . . . . . . . . . . . .  11

<u>Conley v. Gibson</u>,
    355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Center for National Security Studies v. Department of Justice,
    331 F.3d 918 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

District of Columbia v. Air Florida, Inc.,
    750 F.2d 1077 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

E.E.O.C. v. St. Francis Xavier Parochial School,
    117 F.3d 621 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

First National Bank of Scotia v. United States,
    530 F. Supp. 162 (D.D.C. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fressola v. Manbeck,
    1995 WL 656874 (D.D.C. Mar. 30, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gregg v. Barrett,
    771 F.2d 529 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harris v. Shamrock Coal Co.,
    2005-BLA-05039 (July 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Harris v. Ladner,
    127 F.3d 1121 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Houchins v. KQED, Inc.,
    438 U.S. 1, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 30

JEM Broadcast Co. v. FCC,
    22 F.3d 320 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Johnson v. United States,
    628 F.2d 187 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

J.S. v. National Mine Corp.,
    2005-BLA-05708 (Aug. 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Keller v. Embassy of U.S.,
    522 F. Supp. 2d 213 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kokkonen v. Guardian Life Insurance Co. of America,
    511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) . . . . . . . . . . . . . . . . . . . . . 7

Kowal v. MCI Communications Corp., Inc.,
    16 F.3d 1271 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kropat v. FAA,
 162 F.3d 129 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Lamoille Valley R.R. Co. v. ICC,
 711 F.2d 295 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mathews v. Eldridge,
 424 U.S. 319, 96 S. Ct. 839, 47 L. Ed. 2d 18 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

NLRB v. Sears, Roebuck & Co.,
 421 U.S. 132, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Neighborhood TV Co. v. FCC,
 742 F.2d 629 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Nixon v. Warner Communications, Inc.,
 435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

People for Ethical Treatment of Animals v. U.S. Department of Agriculture,
 2007 WL 1720136 (D.D.C. June 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Pickus v. U.S. Board of Parole,
 507 F.2d 1107 (D.C. Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Public Citizen v. Department of State,
 276 F.3d 634 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Richmond Newspapers, Inc. v. Virginia,
 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . 29

Sierra Club v. Department of Interior,
 384 F. Supp. 2d 1 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Smith v. NTSB,
 981 F.2d 1326 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Trailways Lines, Inc. v. ICC,
 766 F.2d 1537 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

U.S. Department of Labor v. Kast Metal Corp.,
 744 F.2d 1145 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
 435 U.S. 519, 98 S. Ct. 1197, 55 L. Ed. 2d 460 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Washington Hospital Ctr. v. Heckler</u>,
    581 F. Supp. 195 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATUTES**

5 U.S.C. § 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 554 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

5 U.S.C. § 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

30 U.S.C. § 932 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 22, 30

30 U.S.C. § 936 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

33 U.S.C. § 919 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 26

33 U.S.C. § 921 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

33 U.S.C. § 923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 30

33 U.S.C. § 939 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

**REGULATIONS**

20 C.F.R. §§ 702.301-702.394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

20 C.F.R. § 702.331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

20 C.F.R. § 702.344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

20 C.F.R. § 702.391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

20 C.F.R. §§ 725.301-725.483 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

20 C.F.R. § 725.309 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20 C.F.R. § 725.451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

20 C.F.R. § 725.452 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

20 C.F.R. § 725.477 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 20

20 C.F.R. § 725.477 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

20 C.F.R. § 725.481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

20 C.F.R. § 725.482 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 C.F.R. § 18.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

29 C.F.R. § 18.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

29 C.F.R. §§ 18.17-18.24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## MISCELLANEOUS

Black Lung Benefits Program: Standards for Processing, Adjudication, and Payment of
    Claims, 43 Fed. Reg. 36,772, 36,772 (Aug. 18, 1978) . . . . . . . . . . . . . . . . . . . . . . . .  19

Delegation of Authority and Assignment of Responsibility for DOL Enterprise Communications
    Initiative, 70 Fed. Reg. 59,200, 59,200 (Oct. 11, 2005) . . . . . . . . . . . . . . . . . . . . . . . .  12

Electronic Freedom of Information Act Amendments of 1996,
    Pub. L. 104-231, 110 Stat. 3048 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 24

H.R. Rep. No. 89-1497, at 7 (1966), reprinted in 1966 U.S.C.C.A.N. at 2424 . . . . . . . . . . . .  25

Kenneth C. Davis, The Information Act: A Preliminary Analysis,
    34 U. Chi. L. Rev. 761 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Regulations Implementing the Black Lung Benefits Act of 1969, as Amended, 72 Fed. Reg.
    4204 (Jan. 30, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 20

U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

## INTRODUCTION

Congress has charged the Department of Labor ("DOL") with the responsibility and authority to adjudicate contested claims for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA") and the Black Lung Benefits Act ("BLBA"). If a claim is contested by the claimant's employer or its insurance carrier, upon request the parties are entitled to a hearing before an administrative law judge in the Office of Administrative Law Judges ("OALJ"), a component within DOL. The recent practice of the OALJ – unaffected by the change at issue here – has been to publish decisions in such cases.

Recently, DOL has received a number of comments from past claimants and members of Congress raising concerns that the publication of these decisions has resulted in the embarrassing public disclosure of the medical history and other intimate details of the claimants and their family members. The widespread use of Internet search engines such as Google, which indexed decisions posted on DOL's website and made them readily available through users' searches, meant that a casual Internet surfer who entered the name of a claimant could easily find OALJ opinions. To address these concerns, DOL requested that Google delete cached DOL decisions, and DOL modified its website indexing profile to request that no decisions be indexed by any Internet search engine. The OALJ also modified its procedure for captioning certain published decisions, using claimants' initials instead of their full names. As a result of this change, decisions displayed on the agency's website now include only a claimant's initials.

Plaintiff and Plaintiff-Intervenors are an insurance carrier and two trade associations of employers that are subject to claims under the Longshore and Black Lung Acts. They ask the Court to vacate the procedural change for reporting decisions on the grounds that DOL did not

1

engage in notice-and-comment rulemaking to adopt the change and, even if the Department had done so, the Constitution and various federal statutes require that decisions issued in administrative adjudications include the full names of the parties.

Plaintiffs' complaints should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and for failure to state a claim upon which relief can be granted. First, the Administrative Procedure Act ("APA") does not allow judicial review of the claimant name change because Plaintiffs have an adequate alternate remedy, in that they can obtain the identity of a claimant by filing a request for other case-related documents under the Freedom of Information Act ("FOIA"). Even if the Court finds otherwise, the procedural change was validly instituted by the Chief Administrative Law Judge, through the exercise of the authority delegated to him as the head of the OALJ. The challenged action, if it even rises to the level of a rule, is no more than a rule of agency procedure and practice, and thus exempt from the APA's requirements of notice and comment. Plaintiffs' substantive claims also fail because the legal authority invoked in Plaintiffs' complaints does not prohibit the claimant name change. Nothing in the LHWCA, the BLBA, FOIA, the Constitution of the United States, or common law requires DOL to include a claimant's full name in published administrative decisions when the OALJ otherwise conducts an open hearing. Even if the Court has jurisdiction, each cause of action fails to state a viable legal claim, and Plaintiffs' complaints should be dismissed.

## BACKGROUND

## I.    ADJUDICATION OF LONGSHORE AND BLACK LUNG CLAIMS

The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, and the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944, establish workers'

compensation programs to pay benefits to certain maritime workers and coal miners,

respectively. While the statutes set forth different substantive criteria by which claimants must

establish their injuries and damages, the BLBA specifically incorporates the adjudicative

procedures of the LHWCA, and thus claims for benefits under each Act are generally

adjudicated using identical procedures. See 30 U.S.C. § 932(a) (provision in the BLBA

incorporating, inter alia, 33 U.S.C. §§ 919 and 921, "except as otherwise provided in this

subsection or by regulations of the Secretary" of Labor).

Accordingly, if an individual's claim for benefits is contested by his or her employer or

its insurance carrier, upon the request of any party the claim is referred to the Office of the Chief

Administrative Law Judge for a hearing by the OALJ. See 33 U.S.C. § 919(d); 20 C.F.R. §§

702.331, 725.451-725.452. After a hearing, an administrative law judge issues a final decision

and order either awarding compensation or rejecting the individual's claim. Decisions from the

OALJ are reviewable by the Benefits Review Board, and decisions of that board are in turn

subject to review in the courts of appeal. See 33 U.S.C. § 921; 20 C.F.R. §§ 702.391, 725.481-

725.482.

The Secretary of Labor has promulgated regulations governing the filing and

adjudication of claims for benefits. See 20 C.F.R. §§ 702.301-702.394 (longshore claims); id. §§

725.301-725.483 (black lung claims). While the regulations adopted pursuant to the LHWCA

are silent as to the format of parties' names in ALJ decisions, regulations adopted in 1978 to

implement the BLBA established specific requirements for OALJ decisions in black lung cases.

One regulation required that decisions issued under the BLBA "shall contain a statement of the

basis of the order, the names of the parties, findings of fact, conclusions of law, and an award,

rejection or other appropriate paragraph containing the action of the administrative law judge, his or her signature and the date of issuance." 20 C.F.R. § 725.477(b) (1979) (emphasis added).

The OALJ's recent practice has been to make its final decisions available to the public, and prior to 2006 the decisions included the full names of the parties, including claimants. This policy was consistently applied not only for BLBA proceedings but also in cases under the LHWCA. While the decisions usually contain detailed information about the claimant's physical condition and medical history, as well as other personal information about the claimant and his dependents or survivors, the limited public interest in the decisions ensured that the publication's practical impact on claimants was negligible.

Following Congress's enactment of the Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-231, 110 Stat. 3048, however, FOIA required agencies to publish their adjudicative decisions on the Internet. 5 U.S.C. § 552(a)(2). As a result, the OALJ began to publish final decisions issued under the LHWCA and the BLBA to its publicly available website, http://www.oalj.dol.gov. While this practice facilitated public access to OALJ decisions, and allowed interested parties to easily locate decisions in order to research the law applied in the OALJ decision-making process, it also had the unintended consequences of exposing intimate and sensitive details of the claimants' backgrounds to full public view. A simple Google search for an individual's name returned search results including OALJ decisions in which the individual's name had been used. The ability of a friend, a neighbor, a co-worker, or a data miner, in a time in which the dissemination of personal information led to increased fears of identity theft, to easily find detailed personal information eviscerated the practical obscurity that previously attached to OALJ decisions.

## II.    THE CHANGE IN PUBLICATION OF CLAIMANT NAMES

To address these concerns, DOL decided to modify its practice of identifying claimants in OALJ decisions through the use of their full names.  This change was announced by Chief Administrative Law Judge John Vittone, the head of the OALJ, on July 3, 2006, and took effect on August 1, 2006.  See Pl. NAWE's Compl., Ex. A at 1 (announcement of claimant name change).  Pursuant to the new procedure, the OALJ "will avoid referring directly to the claimant's name in decisions or other orders that are required to be posted on the DOL web site." Id.  In final decisions issued by the OALJ for benefits claims under the LHWCA and the BLBA, the caption and text of the decisions now include only claimants' first and last initials, instead of their full names.[1]

The rule affects only the format of the final decisions issued in a case.  Other orders issued in a case, which are not published to the DOL website, still contain the claimant's full name.  In the notice announcing the change, Chief Judge Vittone explained that OALJ hearings would remain open to the public and that the rule did not signify that DOL or the OALJ considered the claimant's name or the existence of his case to be a secret.  Id.  The claimant does not proceed anonymously against the respondent, and the hearing process does not change in any way whatsoever.  The respondent to a claim still has full knowledge of the claimant's identity and the same ability to defend its position, and decisions may still be persuasive legal authority

---

[1] While the OALJ is responsible for the adjudication of claims under various other statutes, including several whisteblower statutes,  the claimant name change applies only to cases arising under the LHWCA and the BLBA.  Additionally, the claimant name change announced by Chief Judge Vittone applies only to the OALJ.  Several other DOL bodies, such as the Benefits Review Board and the Employees' Compensation Appeals Board, have adopted substantially similar policies on their own initiative.

in subsequent OALJ proceedings.  Furthermore, when a decision is issued, the parties to the case are sent a copy of the decision along with a cover letter identifying the claimant's full name.  Id. at 2.  Accordingly, the claimant name change has the limited effect of altering the formatting of final LHWCA and BLBA decisions, and does not change the adjudicative process itself or the legal standards or analysis applied to a claim for benefits.[2]

Given OALJ's procedural change, DOL also published a notice in the Federal Register announcing an amendment to the regulation requiring decisions issued under the BLBA to include "the names of the parties."  See Regulations Implementing the Black Lung Benefits Act of 1969, as Amended, 72 Fed. Reg. 4204 (Jan. 30, 2007) (codified at 20 C.F.R. § 725.477).  To ensure that DOL and the OALJ retain the flexibility to revisit the practice as appropriate, the amended regulation does not preclude use of the claimant's name, but instead is silent on that issue.  The regulation now requires:

> A decision and order shall contain a statement of the basis of the order, findings of fact, conclusions of law, and an award, rejection or other appropriate paragraph containing the action of the administrative law judge, his or her signature and the date of issuance. A decision and order shall be based upon the record made before the administrative law judge.

20 C.F.R. § 725.477(b) (2007).

---

[2] For an example of the limited impact of the change, Defendant respectfully refers the Court to the captions of two decisions issued before and after enactment of the claimant name change.  Compare Harris v. Shamrock Coal. Co., 2005-BLA-05039 (July 31, 2006) (available at http://www.oalj.dol.gov/Decisions/ALJ/BLA/2005/HARRIS_BENNY_R_v_SHAMROCK_CO AL_CO_DIR_2005BLA05039_(JUL_31_2006)_165745_CADEC_SD.HTM) (last accessed March 25, 2008) (attached as Ex. 1), with J.S. v. National Mine Corp., 2005-BLA-05708 (Aug. 1, 2006) (available at http://www.oalj.dol.gov/Decisions/ALJ/BLA/2005/JS_v_NATIONAL_MINES_CORP__2005B LA05708_(AUG_01_2006)_114026_CADEC_SD.HTM) (last accessed March 25, 2008) (attached as Ex. 2).

On December 14, 2007, Plaintiff National Association of Waterfront Employers ("NAWE") filed a complaint challenging the legality of the claimant name change.  On January 17, 2008, after being granted leave to intervene, Plaintiff-Intervenors Old Republic Insurance Company and Association of Bituminous Contractors, Inc. filed a complaint in intervention, stating substantially similar claims against the rule.[3]  Together, the complaints challenge the claimant name change under the Administrative Procedure Act, the Freedom of Information Act, the LHWCA, the BLBA, the First and Fifth Amendments to the Constitution of the United States, and common law.  Defendant hereby moves the Court to dismiss all claims raised in each complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## STANDARD OF REVIEW

Rule 12(b)(1) allows for a preliminary challenge to a court's subject matter jurisdiction over an action. Because federal courts are courts of limited jurisdiction, it is presumed that a plaintiff's action lies outside of that jurisdiction.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 US. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).  For that reason, a plaintiff bears the burden of demonstrating that a court has jurisdiction over the action.  See Keller v. Embassy of U.S., 522 F. Supp. 2d 213, 217 (D.D.C. 2007).

Rule 12(b)(6) provides a mechanism for testing the legal sufficiency of the factual allegations in a plaintiff's complaint.  To survive a motion to dismiss, the complaint "must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted."  District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1078 (D.C. Cir.

---

[3] Where appropriate, Plaintiff and Plaintiff-Intervenors are thus referred to collectively as "Plaintiffs."

1984).  Under this rule, a court treats the complaint's factual allegations as true and draws all

reasonable inferences in the plaintiff's favor.  Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir.

1997).  However, a court "need not accept inferences drawn by [a plaintiff] if such inferences are

unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'ns Corp., Inc., 16

F.3d 1271, 1275 (D.C. Cir. 1994).  The scope of the court's evaluation of the sufficiency of the

factual allegations is limited to "only the facts alleged in the complaint, any documents either

attached to or incorporated in the complaint and matters of . . . judicial notice."  E.E.O.C. v. St.

Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  "A court must dismiss a

complaint where, even assuming all the factual allegations are true, the plaintiff has failed to

establish a right to relief based upon those facts."  Gregg v. Barrett, 771 F.2d 529, 547 (D.C. Cir.

1985).

## ARGUMENT

### I.    THE APA DOES NOT ALLOW JUDICIAL REVIEW OF THE CLAIMANT NAME CHANGE

Plaintiffs' claims are brought pursuant to the Administrative Procedure Act, which

waives the sovereign immunity of the United States and allows a court to "hold unlawful and set

aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2), (A); see, e.g., Pl.-Intervenors' Compl. ¶¶ 34, 37, 39

(invoking § 706 for each count of complaint).  Since the APA precludes judicial review when an

adequate alternate remedy is available, and Plaintiffs can obtain the information they seek

through a FOIA request, Plaintiffs' claims should be dismissed.

As this Court has recently recognized, "[t]he APA authorizes judicial review only when

the challenged agency action is final and when there is no other adequate remedy."  People for

8

Ethical Treatment of Animals v. U.S. Dep't of Agriculture, 2007 WL 1720136, at *7 (D.D.C. June 11, 2007).  See 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); see also Bowen v. Massachusetts, 487 U.S. 879, 903, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988); First Nat. Bank of Scotia v. United States, 530 F. Supp. 162, 167 (D.D.C. 1982) ("It is . . . well-settled that '[w]here Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those situations to which it applies.'") (quoting Memphis Trust Co. v. Bd. of Governors of the Fed. Reserve Sys., 584 F.2d 921, 925 (6th Cir. 1978)).

Plaintiffs' claims are dependent on the existence of a legal right for individuals to access the full names of claimants in LHWCA and BLBA adjudicatory proceedings to which they are not parties.  Defendant argues below that no such right requires the publication of claimants' names in OALJ decisions.  But even assuming that Plaintiffs do have such a right, and assuming that the claimant name change actually impacts the exercise of that right, Plaintiffs have an entirely adequate existing remedy that precludes their APA claims.  A party may file a request under FOIA seeking DOL's records in cases involving a particular individual.  See 5 U.S.C. § 552(a)(3).  This right to obtain information pursuant to a FOIA request is specifically enforceable in federal court, id. § 552(a)(4)(B), thus making it an adequate remedy for purposes of the APA.  Accordingly, this Court has recognized that "an APA claim is precluded where a remedy under FOIA is available."  People for Ethical Treatment of Animals, 2007 WL 1720136, at *7; see also Sierra Club v. Dep't of Interior, 384 F. Supp. 2d 1, 30 (D.D.C. 2004).  Plaintiffs could file a FOIA request for the information they seek.  Given the existence of such an adequate

alternate remedy, this Court should recognize a bar to its review of Plaintiffs' claims under the APA, and accordingly dismiss Plaintiffs' complaints.

If the Court does review Plaintiffs' claims, however, it should still dismiss both complaints for failure to state a claim upon which relief can be granted. Defendant addresses each claim in turn.

## II. CHIEF JUDGE VITTONE HAS THE AUTHORITY TO IMPLEMENT THE CLAIMANT NAME CHANGE

In an attempt to discredit the procedural validity of the claimant name change, Plaintiffs contend that Chief Administrative Law Judge Vittone, the head of the OALJ, lacks the authority to adopt a policy governing the manner in which the OALJ publishes administrative opinions on its website. See Pl. NAWE's Compl., Count 2, ¶ 34 ("[T]he Chief ALJ is without constitutional, statutory or delegated authority to adopt any rules, regulations or policies concerning the administration of the Longshore Act."); see also Pl.-Intervenors' Compl., ¶ 21. These allegations state no viable legal claim. The enactment of the claimant name change was a valid exercise of the authority delegated by Congress to the Secretary of Labor and re-delegated to the Chief Administrative Law Judge.

The LHWCA and the BLBA give broad authority to the Secretary to administer the Acts and the adjudicative system of benefits payments. In the LHWCA, for example, Congress provided that "the Secretary shall administer the provisions of this Act, and for such purpose the Secretary is authorized (1) to make such rules and regulations . . . as may be necessary in the administration of this Act." 33 U.S.C. § 939; see also 30 U.S.C. §§ 932(a) (providing that claims for benefits under the BLBA shall be adjudicated using the procedures of the LHWCA, and

delegating additional authority to the Secretary to administer the payment of benefits under the BLBA), 936(a).[4]

Additionally, Congress has given the Secretary broad authority to manage the work of the Department of Labor. 5 U.S.C. § 301 allows the Secretary to "prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business." The Supreme Court has recognized that this statute grants "authority to the agency to regulate its own affairs," and that the provision allows the Secretary to enact what the APA would consider procedural rules of agency organization, procedure, or practice. Chrysler Corp. v. Brown, 441 U.S. 281, 309, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979).

The Secretary has delegated certain administrative responsibilities for the management of DOL components to DOL agency heads, including the Chief Administrative Law Judge in his capacity as the head of the OALJ. In Secretary's Order 2-2005, the Secretary assigned her responsibilities for the management of DOL enterprise communications services, including the Department's websites. See Delegation of Authority and Assignment of Responsibility for DOL Enterprise Communications Initiative, 70 Fed. Reg. 59,200, 59,200 (Oct. 11, 2005). Through the order, the Chief Administrative Law Judge and other DOL agency heads were "delegated authority and assigned responsibility for developing, implementing, improving, and expanding their respective agency enterprise communications services in accordance with the Order and

---

[4] As the Supreme Court has recognized, such language gives the Secretary broad authority to formulate policy regarding the administration of the Acts. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ("'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'") (quoting Morton v. Ruiz, 415 U.S. 199, 231, 94 S. Ct. 1055, 39 L. Ed. 2d 270 (1974)).

11

DOL policy and standards." Id. at 59,200, ¶ 7(g).  The authority delegated to the Chief

Administrative Law Judge includes the responsibility to "ensure that all information published

via enterprise communications services . . . are managed in accordance with the Federal Records

Act, Privacy Act, and other applicable legislative and administrative mandates and guidance,"

and to "[e]nsure that DOL policies, standards, and procedures are implemented."  Id.

     Accordingly, the Chief Administrative Law Judge has the authority to manage the

OALJ's website and to regulate the documents that are posted to the site.  As discussed above,

and as Chief Judge Vittone explained in his announcement, the claimant name change was

adopted in response to the 1996 amendments to FOIA, under which DOL is legally required to

publish OALJ's adjudicative decisions to the Internet.  See Pl. NAWE's Compl., Ex. A at 1

(announcement of change).  DOL found that the publication of longshore and black lung

decisions had led to public exposure of claimants' personal information, and that such

publication undermined DOL's policy of limiting the unnecessary exposure of claimants'

information on the Internet.  Accordingly, Chief Judge Vittone adopted the claimant name

change, which has the limited effect of changing the formatting and contents of certain

documents that are posted to the OALJ website.  See id. (explaining that effect of the rule is

limited to "documents to be posted on a DOL web site").  Just as Chief Judge Vittone's

responsibilities under Secretary's Order 2-2005 include the authority to establish a website to

publish OALJ decisions, in order to fulfill the agency's FOIA obligations, it is also within his

authority to administer that website by adopting uniform procedures and practices for the format

of posted documents, in furtherance of DOL policy.  Chief Judge Vittone has the authority to

adopt a policy such as the claimant name change, and Plaintiffs' allegations to the contrary fail

to state actionable claims.

### III.    THE CLAIMANT NAME CHANGE IS AT MOST A PROCEDURAL RULE NOT SUBJECT TO APA NOTICE AND COMMENT REQUIREMENTS

Plaintiffs contend that the OALJ could not implement the claimant name change without

providing public notice and an opportunity for comment.  Since the claimant name change is at

most a rule of agency practice and procedure, the change is specifically exempted from the

APA's notice and comment requirements.  Furthermore, while DOL employed notice and

comment proceedings in 1978 when it adopted a regulation requiring the use of full names, a

procedural rule remains exempt from notice and comment even if it amends a procedural rule

voluntarily adopted through notice and comment.  An agency does not waive the APA's

exemptions from notice-and-comment merely because in the past it voluntarily did more than the

APA required.  Finally, while Plaintiffs contend that the process by which OALJ adopted the

claimant name change violated the procedural requirements of the LHWCA and the BLBA,

those Acts do not impose constraints on DOL's rulemaking process.  The procedural claims

raised in Count 1 of Plaintiff NAWE's complaint and Count II of Plaintiff-Intervenors'

complaint should thus be dismissed for failure to state a claim upon which relief can be granted.

### A.    The claimant name change is exempt from the APA's requirements of notice-and-comment rulemaking

Plaintiffs contend that the implementation of the claimant name change was inconsistent

with the procedural requirements of the APA, in that DOL failed to engage in notice-and-

comment rulemaking.  See Pl. NAWE's Compl., Count 1, ¶ 33; Pl.-Intervenors' Compl., Count I,

¶ 34.  The APA generally requires that an agency engaged in rulemaking publish a "[g]eneral

13

notice of proposed rule making" and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments."  5 U.S.C. § 553(b).  Through the requirements of notice and comment, the APA ensures "public participation and fairness to affected parties" in an agency's rulemaking process.  Batterton v. Marshall, 648 F.2d 694, 703 (D.C. Cir. 1980).  But the APA specifically exempts certain rules from the notice and comment process, including "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b)(A).  If the claimant name change rises to the level of a rule, it is at most a rule of agency procedure and practice.  Since such a rule is exempt from the APA's notice-and-comment requirements, it was entirely appropriate for DOL to adopt the rule without such proceedings.

The APA's exemption for rules of procedure and practice has been called the "hardest exception to define."  Neighborhood TV Co. v. FCC, 742 F.2d 629, 637 (D.C. Cir. 1984).  But as the D.C. Circuit has explained, "[a] useful articulation of the exemption's critical feature is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which parties present themselves or their viewpoints to the agency."  Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1047 (D.C. Cir. 1987).  To determine if a rule falls within this exemption, courts in this circuit consider "whether the agency action also encodes a substantive value judgment or puts a stamp of approval or disapproval on any given type of behavior."  Id.

Given the limited effects of the claimant name change, the rule is no more than a routine procedural rule implementing a uniform practice for the format and content of final LHWCA and BLBA decisions issued by the OALJ.  Changing the format of a party's name in published

14

decisions does not affect the rights of parties and it makes no substantive judgments as to parties'

behavior.  It has no effect on the filing of a claim, the presentation of evidence, or other aspects

of the adjudicative process.  It does not change the format of interim decisions and orders issued

in a case but not published to the Internet.  As explained in the OALJ's announcement of the

policy, "the claimant's name and the fact that the claimant has a case pending before an ALJ is a

matter of public record.  Consequently, except for documents to be posted on a DOL web site,

the hearing process will not change."  Pl. NAWE's Compl., Ex. A at 1.

　　　　An agency rule that shifted the burden of proof, or somehow affected the parties' basic

ability to present their case to the ALJ, would be substantive and require notice and comment.

For example, the D.C. Circuit previously found parole board guidelines to be substantive rules

because the guidelines "were of a kind calculated to have a substantial effect on ultimate parole

decisions."  Pickus v. U.S. Board of Parole, 507 F.2d 1107, 1112-13 (D.C. Cir. 1974).  But

unlike legislative rules that "grant rights, impose obligations, or produce other significant effects

on private interests," Batterton, 648 F.2d at 701-02, the claimant name change does not affect the

substantive process by which OALJ claims are adjudicated.  The change does not alter how DOL

and the OALJ interpret or apply any statute, including the provisions of the relevant workers'

compensation programs, the LHWCA and the BLBA.  It does not affect the ALJs' legal analysis

in any way.  See JEM Broad. Co. v. FCC, 22 F.3d 320, 326-27 (D.C. Cir. 1994) (concluding that

a regulation was "procedural" because it did not change the substantive standards by which an

agency evaluated applications).  Since it is not "likely to have the intent or effect of substantially

altering party behavior," U.S. Dep't of Labor v. Kast Metal Corp., 744 F.2d 1145, 1150 (5th Cir.

1984), the claimant name change is a purely procedural rule.

While Plaintiffs will argue that the claimant name change affects the ability of interested non-parties to know the identity of a claimant who may later file a benefits claim against them, it is important to recognize how limited this procedural impact is. The parties to an adjudication still know the identity of the claimant, and a party contesting an individual's claim for benefits can obtain information about past injuries and previous claims, including cases in which the claim resulted in an ALJ's decision granting or rejecting the claim. The discovery procedures applicable in OALJ proceedings allow the parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the proceeding." 29 C.F.R. § 18.14(a); see also id. § 18.13 (providing for discovery by "[d]epositions upon oral examination or written questions; written interrogatories; production of documents or other evidence for inspection and other purposes"); id. §§ 18.17-24 (regulating discovery). See also 20 C.F.R. § 725.309(d)(1) (in BLBA claims, requiring that "[a]ny evidence submitted in connection with any prior claim shall be made a part of the record in a subsequent claim").

The fact that non-parties to DOL administrative proceedings, such as Plaintiffs, are affected in a minimal way does not change the procedural nature of the change. Fressola v. Manbeck, 1995 WL 656874, at *4 n.7 (D.D.C. Mar. 30, 1995) (the limited impact of a rule affecting the form of patent applications does not make the rule legislative, since all procedural rules have some limited impact on parties and the public). The D.C. Circuit has considered rules with far greater impact than the claimant name change and found them to be procedural. See, e.g., Public Citizen v. Dep't of State, 276 F.3d 634, 641 (D.C. Cir. 2002) (rule adopting date of FOIA request as date to cut-off search "encodes no substantive value judgment" and is thus procedural because it "applies to all FOIA requests, making no distinction between requests on

16

the basis of subject matter"); <u>Lamoille Valley R.R. Co. v. ICC</u>, 711 F.2d 295, 328 (D.C. Cir. 1983) (holding that rules that "prescribe[] a timetable for asserting substantive rights" are procedural so long as the rules do not "foreclose effective opportunity to make one's case on the merits"). Since the claimant name change does not affect "the <u>substantive standards</u> by which the [agency] evaluates" benefits claims, <u>JEM Broadcasting Co.</u>, 22 F.3d at 327, the change is a procedural rule, and thus exempt from notice and comment.

Finally, the Court should accord deference to DOL's own determination that its rule is procedural. "'[I]t is well established that a court, in determining whether notice and comment procedures apply to an agency action, will consider the agency's own characterization of the particular action, <u>Am. Hosp. Ass'n</u>, 834 F.2d at 1056, and will 'generally give[] deference to the agency's views.' <u>British Caledonian Airways Ltd. v. Civil Aeronautics Bd.</u>, 584 F.2d 982, 991 (D.C. Cir. 1978)." <u>Beverly Health & Rehab. Servs., Inc. v. Thompson</u>, 223 F. Supp. 2d 73, 103 (D.D.C. 2002). "[A]n agency's characterization of its own action, while not decisive, is a factor [to] consider." <u>Am. Hosp. Ass'n</u>, 834 F.2d at 1047. DOL's own determination was that the claimant name change was a routine procedural rule, and thus it did not engage in notice and comment. <u>See also</u> Pl. NAWE's Compl., Ex. B at 1 (letter from then-Acting Solicitor of Labor Jonathan L. Snare to counsel for Plaintiff NAWE explaining that the claimant name change was a rule of agency procedure). Since the claimant name change was exempt from notice and comment, Plaintiffs' claims to the contrary should be dismissed.

**B.    A pre-existing procedural rule can be validly amended without notice and comment**

Plaintiff-Intervenors also contend that the claimant name change was implemented unlawfully because DOL supplanted a pre-existing regulation that required the OALJ to include

17

claimants' full names in BLBA decisions.  See Pl.-Intervenors' Compl., Count II, ¶ 37.  Since

the original regulation was promulgated after notice and comment, Plaintiff-Intervenors claim

that DOL was required to engage in a second round of notice and comment in order to repeal or

revise the rule.  Id.  Plaintiff-Intervenors state no viable legal claim.  The provision at issue, 20

C.F.R. § 725.477, was promulgated in 1978 as part of a comprehensive package of rules that

included both substantive and procedural rules.  While DOL engaged in notice and comment for

the entire rulemaking proceeding, § 725.477 was a limited provision that was procedural in

nature.  Nothing in the APA requires an agency to engage in notice and comment to adopt,

revise, or repeal a pre-existing procedural rule.

### 1.    DOL's extensive 1978 rulemaking included both substantive and procedural rules

In 1978, the Secretary of Labor adopted an extensive set of regulations establishing

"procedures and standards to be applied in the processing, adjudication and payment of claims

for black lung benefits."  See Black Lung Benefits Program: Standards for Processing,

Adjudication, and Payment of Claims, 43 Fed. Reg. 36,772, 36,772 (Aug. 18, 1978) (repealing

20 C.F.R. parts 715, 717, and 720, and revising 20 C.F.R. part 725).  The 1978 rulemaking,

conducted in response to the enactment of the Black Lung Benefits Reform Act of 1977 and the

Black Lung Benefits Revenue Act of 1977, substantially overhauled the adjudicative process for

black lung cases by effectively rewriting 20 C.F.R. part 725.  In all, the rulemaking adopted or

revised 171 separate regulatory sections in part 725, see id. at 36,772-74, and enacted both

substantive and procedural rules.

Given that the rulemaking changed "the standards for determining eligibility for benefits,

modif[ied] the evidentiary requirements necessary to establish entitlement to benefits,

18

eliminate[d] certain restrictions on the filings of claims, [and] establish[ed] penalties to be imposed if a coal mine operator fails to meet its obligations," id. at 36,772, many of its provisions affected the substantive rights of parties involved in black lung adjudications.  The adoption of such substantive provisions required notice and comment, and the Secretary fulfilled that obligation by engaging in notice and comment for the entire rulemaking proceeding.

Many of the provisions adopted in 1978 did not affect substantive rights, though, and standing alone such procedural rules would not require notice and comment.  One such provision was 20 C.F.R. § 725.477, titled "Form and contents of decision and order."  That provision, which received no comments in the rulemaking process, see id. at 36,800, provided in part that decisions and orders adjudicating claims for benefits "shall contain a statement of the basis of the order, the names of the parties, findings of fact, conclusions of law, and an award, rejection or other appropriate paragraph containing the action of the administrative law judge, his or her signature and the date of issuance."  20 C.F.R. § 725.477(b) (1979).  Accordingly, final decisions issued for black lung benefits following the promulgation of the regulation were required to include the claimants' names.

After the OALJ announced the claimant name change in 2006, DOL published a notice in the Federal Register eliminating the requirement that a decision issued pursuant to the BLBA contain the parties' names.  See Regulations Implementing the Black Lung Benefits Act of 1969, as Amended, 72 Fed. Reg. 4204 (Jan. 30, 2007).  Pursuant to that notice, § 725.477(b) was amended and no longer includes the phrase "the names of the parties."  See 20 C.F.R. § 725.477(b) (2007).

19

**2.    DOL did not waive the notice-and-comment exemptions by voluntarily inviting public participation**

Generally, "an agency's obligation to engage in notice and comment procedures before promulgating regulations also extends to amendments and repeals of regulations." Ball Memorial Hosp. v. Leavitt, 2006 WL 2714920, at *6 (D.D.C. Sept. 22, 2006).  Just as the promulgation of a substantive rule affecting the rights of parties requires notice and comment, the subsequent amendment of such a rule is equally substantive, and requires the same process. But this principle has a clear limit: a rulemaking proceeding in which an agency amends or repeals a procedural rule itself constitutes a procedural rule, and thus neither requires notice and comment.  See Beverly Health & Rehab. Servs., 223 F. Supp. 2d at 103-04 & n.32 (recognizing that the requirement that an existing rule be modified with notice and comment is subject to exception for rules of procedure and practice and statements of general policy).  When the enactment of a rule is exempt under § 553(b)(A), a subsequent change to that rule similarly does not require notice and comment.

The fact that DOL voluntarily engaged in notice and comment proceedings when it adopted § 725.477(b) in 1978 did not require the agency to do so again in order to amend the rule in 2006.  Washington Hosp. Ctr. v. Heckler, 581 F. Supp. 195, 199 (D.D.C. 1984) (rejecting argument that Secretary of Health, Education and Welfare was required to employ notice and comment in order to repeal a rule merely because he adopted it with notice and comment).  Similarly, the fact that DOL engaged in notice-and-comment rulemaking in 1978 does not somehow convert § 725.477(b) to a substantive rule, the amendment of which would require notice and comment.  See Ass'n of Nat'l Advertisers, Inc. v. FTC, 617 F.2d 611, 631 n.25 (D.C. Cir. 1979) (Skelly Wright, J., concurring) ("The mere fact that the EPA voluntarily provided

20

interested persons an opportunity to comment that was not mandated by the APA did not change the essential nature of such rules from 'procedural' to 'substantive.'").  Since the APA clearly exempts procedural rules from notice-and-comment, DOL should not be required to engage in notice and comment merely to amend a procedural rule.  See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 524-25, 98 S. Ct. 1197, 55 L. Ed. 2d 460 (1978) (recognizing that courts cannot augment the APA's requirements for agency rulemaking).

Not only would it be inconsistent with the APA to require DOL to engage in notice and comment to revise a procedural rule, it would also create a disincentive for agencies to voluntarily invite public participation when the APA does not otherwise require it to do so.  Such a rule would penalize an agency for voluntarily offering its proposed rules up for public comment by eliminating the flexibility and efficiency that Congress created when it established the notice-and-comment exceptions in § 553.  See Am. Hosp. Ass'n, 834 F.2d at 1045 (recognizing that the exceptions ensure "effectiveness, efficiency, expedition and reduction in expense").

**C.    The implementation of the claimant name change was procedurally consistent with the LHWCA and the BLBA**

Plaintiffs also claim that DOL's adoption of the claimant name change was somehow inconsistent with the procedural requirements of the LHWCA and the BLBA.  See Pl. NAWE's Compl., Count 1, ¶ 33 (claiming that the rule "was not adopted in accordance with the procedural requirements of the Longshore Act"); Pl.-Intervenors' Compl., Count II, ¶ 37 (claiming that "the rule was not adopted in accordance with the procedural mandates of . . . the LHWCA and the BLBA").  Plaintiffs identify nothing in either Act that restrains the manner in

which DOL or the OALJ adopts procedural rules.  As discussed above, both Acts provide that

the adjudication of claims for benefits shall be administered by administrative law judges.  <u>See</u>

33 U.S.C. § 919(d) (LHWCA hearings shall be conducted by administrative law judges); 30

U.S.C. § 932(a) (BLBA adopting adjudicative procedures of LHWCA).  Moreover, both Acts

also give DOL the authority to administer the programs.  <u>See</u> 30 U.S.C. §§ 932(a), 936(a); 33

U.S.C. § 939; <u>see also</u> 5 U.S.C. § 301 (giving Secretary the authority to "prescribe regulations

for the government of his department . . . [and] the distribution and performance of its

business").  Nothing in the LHWCA or the BLBA restricts the manner in which DOL adopts the

various procedures necessary for the administration of its programs.

　　　　For these reasons, even if everything alleged in Plaintiffs' complaints is taken to be true,

Plaintiffs fail to state any viable claims regarding the procedures by which DOL adopted the

claimant name change.  The claims under Counts 1 and 2 of NAWE's complaint, and the claims

under Count II of Plaintiff-Intervenors' complaint, should be dismissed pursuant to Rule

12(b)(6) for failure to state a claim upon which relief can be granted.

## IV.   PLAINTIFFS STATE NO VIABLE SUBSTANTIVE CHALLENGE TO THE CLAIMANT NAME CHANGE

　　　　Plaintiffs also allege that the claimant name change violates their rights to know the full

names of claimants in OALJ proceedings to which Plaintiffs themselves are not parties.  They

assert claims under the Freedom of Information Act, the LHWCA, the BLBA, the First and Fifth

Amendments to the Constitution of the United States, and common law.  <u>See</u> Pl. NAWE's

Compl., Count 3, ¶ 35; Pl.-Intervenors' Compl., Counts I and III, ¶¶ 34, 39.  Since these legal

authorities do not require DOL to publish claimants' full names in OALJ decisions, Plaintiffs'

substantive claims should be dismissed.

A.    **The OALJ continues to publish its decisions on the Internet, fulfilling DOL's obligations under the Freedom of Information Act**

Plaintiff-Intervenors contend that the claimant name change violates the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by "impair[ing] the informational and statutory rights of plaintiffs to free access to claim information." Pl.-Intervenors' Compl., Count III, ¶ 39; see also id., Count I, ¶ 34. Contrary to Plaintiff-Intervenors' assertion, DOL continues to fulfill its obligations under FOIA, and this claim should be dismissed under Rule 12(b)(6).

FOIA allows a party to file a request for records with the agency, and requires the agency to produce the records unless they are protected from disclosure by a set of statutory exemptions and exclusions. 5 U.S.C. § 552(a)(3). Nothing in the claimant name change affects Plaintiffs' right to obtain such records. Plaintiffs may file a FOIA request for the agency's records relating to an individual claimant, and the agency will respond as required by FOIA. The claimant name change does not alter the fact that "the claimant's name and the fact that the claimant has a case pending before an ALJ is a matter of public record." Pl. NAWE's Compl., Ex A. at 1 (OALJ announcement of change).

Additionally, FOIA requires an executive branch agency to "make available for public inspection and copying" various records, including "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases." 5 U.S.C. § 552(a)(2), (A). Known as the "reading room" provision, this requires DOL to automatically make the final decisions of OALJ proceedings available to the public. In 1996, FOIA was amended by the Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-231, 110 Stat. 3048,

to require agencies to automatically publish such decisions to their web sites.[5]  To fulfill this new

obligation, DOL immediately began to publish OALJ decisions, including final decisions under

the LHWCA and the BLBA, on its website.

      The claimant name change does not affect that practice.  The OALJ continues to publish

its decisions on the Internet, as required by FOIA.  The rule merely changes the formatting of the

decisions.  FOIA does not establish requirements for what the OALJ's decisions should contain;

it merely requires that such decisions be published to the Internet.

      Furthermore, including only the claimant's initials is consistent with the purpose of

including agency decisions in the "reading room" provisions of FOIA.  The Supreme Court has

recognized that requiring routine access to final agency decisions "represents a strong

congressional aversion to 'secret (agency) law' and represents an affirmative congressional

purpose to require disclosure of documents which have 'the force and effect of law.'" NLRB v.

Sears, Roebuck & Co., 421 U.S. 132, 153, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975) (quoting

Kenneth C. Davis, The Information Act: A Preliminary Analysis, 34 U. Chi. L. Rev. 761, 797

(1967), and H.R. Rep. No. 89-1497, at 7 (1966), reprinted in 1966 U.S.C.C.A.N. at 2424); see

also Smith v. NTSB, 981 F.2d 1326, 1328 (D.C. Cir. 1993) (the purpose of this "requirement is

obviously to give the public notice of what the law is so that each individual can act

accordingly").  As discussed above, the claimant name change has no effect on ALJs' legal

analysis, and ALJs are still required to explain the legal reasoning behind their decisions.  See 5

---

[5] The provision now states that:

    For records created on or after November 1, 1996, within one year after such date,
    each agency shall make such records available, including by computer
    telecommunications or, if computer telecommunications means have not been
    established by the agency, by other electronic means.

5 U.S.C. § 552(a)(2).

U.S.C. § 557(c).  DOL continues to publish these decisions in furtherance of FOIA's purpose of providing public access to the agency's decision-making process and informing interested parties of the relevant legal standards applied in OALJ proceedings.

**B.    The claimant name change does not affect the rights of parties under the LHWCA and the BLBA**

Plaintiff-Intervenors next claim that the claimant name change violates the substantive provisions of the LHWCA and the BLBA, "to the extent those Acts expressly require free and unimpaired access to claimant information by a party that may be responsible for the payment of benefits."  Pl.-Intervenors' Compl., Count I, ¶ 34; see also Pl. NAWE's Compl., Count 3, ¶ 35.

The LHWCA provides that hearings before an ALJ "shall be open to the public and shall be stenographically recorded."  33 U.S.C. § 923(b).  As the OALJ explained in announcing the claimant name change, "except for documents to be posted on a DOL web site, the hearing process will not change."  Pl. NAWE's Compl., Ex. A at 1.  Hearings conducted by the OALJ are still open to the public.  The LHWCA and the BLBA are otherwise silent as to the contents of an ALJ's decision, and impose no requirements on the format of such decisions.  DOL is merely required to conduct hearings "in accordance with the provisions of section 554 of Title 5."  33 U.S.C. § 919(d).  5 U.S.C. § 554 requires an ALJ to follow 5 U.S.C. § 557(c), which provides that:

> All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of--
> (A)    findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and
> (B)    the appropriate rule, order, sanction, relief, or denial thereof.

5 U.S.C. § 557(c).  ALJs continue to comply with these terms.

Since Plaintiffs can show nothing in the LHWCA or the BLBA that requires DOL to publish claimants' full names in the OALJ decisions posted on its website, these claims should also be dismissed.

### C.    Plaintiffs state no actionable constitutional claims

Plaintiffs also contend that the rule violates the First and Fifth Amendments to the Constitution of the United States.  Pl. NAWE's Compl., Count 3, ¶ 35; Pl.-Intervenors' Compl., Count III, ¶ 39.  At the outset, these claims should be dismissed because Plaintiffs make only vague allegations that identify neither the rights at issue nor the basis of their claims.  In any event, Plaintiffs have no viable claim that DOL's procedure violates the First or Fifth Amendments.

### 1.    The claimant name change does not violate Plaintiffs' due process rights

Plaintiff-Intervenors contend that the claimant name change violates the Fifth Amendment by infringing on the guarantee of "due process of law to employers and carriers in their defense of claims under the BLBA, LHWCA, and other state and federal laws."  Pl.-Intervenors' Compl., Count III, ¶ 39; see also Pl. NAWE's Compl., Count 3, ¶ 35.  In essence, they argue that they have a due process right to know the identity of the claimant in each and every OALJ decision when it is released because they may subsequently find themselves subject to a benefits claim by that individual.  Since the due process clause does not provide such an expansive right, and nothing in the Fifth Amendment requires DOL to publish longshore and black lung decisions with a claimant's full name, Plaintiffs cannot succeed on such a claim.

The due process clause in the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The

amendment "only requires that a person receive his 'due' process, not every procedural device that he may claim or desire." Johnson v. United States, 628 F.2d 187, 194 (D.C. Cir. 1980). "'Though the required procedures may vary according to the interests at stake in a particular context,' Brock v. Roadway Express, Inc., 481 U.S. 252, 261, 107 S. Ct. 1740, 95 L. Ed. 2d 239 (1987), '[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 839, 47 L. Ed. 2d 18 (1976)." Kropat v. FAA, 162 F.3d 129, 132 (D.C. Cir. 1998), superseded by statute on other grounds, see Battle v. FAA, 393 F.3d 1330, 1335 (D.C. Cir. 2005).

As discussed above, the claimant name change has no effect on the ability of parties in OALJ proceedings to present their evidence and arguments to the decision-maker. The change does not alter the process by which contested claims for longshore and black lung benefits are adjudicated by the OALJ, nor the substantive standards applied by the administrative law judges responsible for such adjudication. Thus, it has no impact on the exercise of the parties' due process rights.

Plaintiff-Intervenors contend that the claimant name change violates the Fifth Amendment right of "employers and insurers to research the claims history of individual claimants in matters arising under the BLBA, LHWCA, and many other state and federal laws in which such claims' history is or may constitute relevant evidence." Pl.-Intervenors' Compl. ¶ 31. As discussed above, DOL has adopted extensive discovery procedures by which parties may obtain relevant evidence in OALJ proceedings, including information about whether a claimant has filed previous claims for benefits. See supra at 16. While employers and insurers may have due process interests in presenting evidence to refute claimants' benefits claims, they do not

have a constitutional right to obtain all potentially relevant evidence from DOL before a claim is even filed. DOL's established discovery procedures more than adequately protect Plaintiffs' due process interests by affording them the opportunity to obtain discovery in order to be heard at the appropriate time – when their views are presented to the ALJ. See also Trailways Lines, Inc. v. ICC, 766 F.2d 1537, 1547 (D.C. Cir. 1985) ("[T]he conduct and extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency in the first instance."). The fact that Plaintiffs might prefer to obtain the information earlier does not give rise to a constitutional violation.

Plaintiff-Intervenors also contend that the claimant name change "impairs the ability of all parties in BLBA and LHWCA cases to research the applicable law, to identify applicable precedent, [and] to respond to arguments asserted by adversaries." Pl.-Intervenors' Compl., ¶ 31. This argument is completely without merit. Even assuming that Plaintiff-Intervenors actually identified some due process interest in obtaining and presenting legal precedent to an ALJ, the claimant name change does not affect their ability to do so.

Following the enactment of the claimant name change, the OALJ continues to publish the final decisions issued by administrative law judges in LHWCA and BLBA cases. The decisions are still routinely published to the OALJ's website, where a party may easily locate specific decisions. The decisions still contain the legal analysis that was included prior to enactment of the claimant name change, and they may still be cited in OALJ proceedings. When parties research and cite relevant precedent, they rely on the law and the factual circumstances of the case, and the claimant name change does not affect a decision's discussion of those issues. The use of claimants' initials instead of their names in legal citations does not impair parties' ability to research the law or present their arguments to an administrative law judge.

28

2.    **The First Amendment does not require DOL to publish decisions including claimants' full names**

Turning to the remaining constitutional claims, Plaintiff-Intervenors contend that the claimant name change violates the First Amendment "to the extent it impairs the rights of Plaintiffs to access to [sic] important public information that is needed by Intervenors-Plaintiffs in conducting their business and in disseminating public information to their members and customers by publication or otherwise."  Pl.-Intervenors' Compl., Count III, ¶ 39; see also Pl. NAWE's Compl., Count 3, ¶ 35.

Plaintiffs appear to base this claim on the Supreme Court's decision in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580, 100 S. Ct 2814, 65 L. Ed. 2d 973 (1980) (plurality opinion).  See Pl. NAWE's Compl., Ex. B at 1 (letter from Plaintiff NAWE's counsel to Chief Judge Vittone claiming that "the Supreme Court has recognized a first amendment right of access to judicial proceedings").  In Richmond Newspapers, a plurality of the Supreme Court found that the First Amendment protects the public's right to attend criminal trials.  448 U.S. at 580 ("[T]he right to attend criminal trials is implicit in the guarantees of the First Amendment.").  The D.C. Circuit has not recognized such a right outside of the criminal context.  See Ctr. for Nat'l Sec. Studies v. Dep't of Justice, 331 F.3d 918, 934 (D.C. Cir. 2003) ("Neither the Supreme Court nor this Court has applied the Richmond Newspapers test outside the context of criminal judicial proceedings or the transcripts of such proceedings.").  But even under the rule of Richmond Newspapers, the claimant name change would not violate the First Amendment because it has no effect on the public's right to attend and observe OALJ hearings.

As Chief Judge Vittone recognized in the announcement of the change, "[b]y statute and regulation, black lung and longshore hearings are open to the public."  Pl. NAWE's Compl., Ex.

A at 1.  See 33 U.S.C. § 923(b) (LHWCA hearings "shall be open to the public and shall be

stenographically reported"); 30 U.S.C. § 932(a) (BLBA hearings conducted pursuant to

procedures of LHWCA); 20 C.F.R. §§ 702.344 (Under the LHWCA, "[a]ll formal hearings shall

be open to the public and shall be stenographically reported."), 725.464 (Under the BLBA, "[a]ll

hearings shall be open to the public and shall be mechanically or stenographically reported.").

The announcement of the rule states that, "except for documents to be posted on a DOL web site,

the hearing process will not change."  Pl. NAWE's Compl., Ex. A at 1.

      Even assuming that the First Amendment guarantees Plaintiffs access to OALJ hearings,

the claimant name change does not interfere with that right and Plaintiffs have no actionable

claim.  As the Supreme Court has recognized, "[t]here is an undoubted right to gather news

'from any source by means within the law,' but that affords no basis for the claim that the First

Amendment compels others – private persons or governments – to supply information."

Houchins v. KQED, Inc., 438 U.S. 1, 11, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978) (plurality

opinion) (quoting Branzburg v. Hayes, 408 U.S. 665, 681-82, 92 S. Ct. 2646, 33 L. Ed. 2d 626

(1972)).

      Since Plaintiffs allege no actionable violation of the First or Fifth Amendments, these

claims should also be dismissed under Rule 12(b)(6).

    **D.**    **Common law does not require published decisions to include claimants' full
names**

      Finally, Plaintiff NAWE alone raises a claim under common law.  The nature of the

claim is hard to discern; Plaintiff NAWE says only that the claimant name change is "arbitrary,

capricious, and not in accordance with the law because" the rule "violates the laws of the United

States (including the common law . . .)."  Pl. NAWE's Compl., Count 3, ¶ 35.  Such a vague and

conclusory statement does not "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)), and should be dismissed under Rule 12(b)(6).  If the Court considers the claim, however, it should still find that Plaintiff NAWE fails to state a claim that the claimant name change violates the common law.

Plaintiff NAWE appears to base this claim on the Supreme Court's recognition in <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978), that there is a common law right "to inspect and copy public records and documents including judicial records and documents."  435 U.S. at 589.  <u>See</u> Pl. NAWE's Compl., Ex. B at 1 (letter from Plaintiff NAWE's counsel to Chief Judge Vittone quoting <u>Nixon</u>).  As discussed above, OALJ hearings are open to the public and stenographically recorded, and the OALJ continues to publish its adjudicative decisions to the Internet.  Plaintiff has complete access to those decisions.  Nothing in the common law regulates the format or contents of such records, and Plaintiff cannot identify anything that requires the OALJ to publish a party's name in its decisions.

## <u>CONCLUSION</u>

For the forgoing reasons, Defendant's motion to dismiss should be granted.

Dated: March 25, 2008.                     Respectfully submitted,

                                           JEFFREY S. BUCHOLTZ
                                           Acting Assistant Attorney General

                                           JEFFREY A. TAYLOR
                                           United States Attorney

                                           RICHARD G. LEPLEY

31

Assistant Branch Director

*/s/ Scott Risner*
SCOTT RISNER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 514-2395
Fax: (202) 616-8470

Attorneys for Defendant

32

# Exhibit 1

**U.S. Department of Labor**

Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

(856) 486-3800
(856) 486-3806 (FAX)



**Issue Date: 31 July 2006**

CASE NO.:    2005-BLA-05039

In the Matter of

**BENNY R. HARRIS,**
          Claimant,

     v.

**SHAMROCK COAL CO., INC.,**
**c/o JAMES RIVER COAL CO.,**
          Self-insured Employer,

    and

**DIRECTOR, OFFICE OF WORKERS'**
**COMPENSATION PROGRAMS,**
          Party in interest.

Appearances:

    MONICA RICE SMITH, Esq.          LOIS A. KITTS, Esq.
        For Claimant                  For Employer

Before:

    JANICE K. BULLARD
    Administrative Law Judge

<u>**DECISION AND ORDER DENYING BENEFITS**</u>

      This proceeding arises from a living miner's claim for benefits under the Black Lung Act, 30 U.S.C. §§901-945 ("the Act") and the regulations issued thereunder, which are found in Title 20 of the Code of Federal Regulations. Regulations referred to herein are contained in that Title.[1]

---

[1] The Department of Labor ("DOL") has amended the regulations implementing the Federal Coal Mine Health and Safety Act of 1969, as amended. These regulations became effective on January 19, 2001, and are found at C.F.R. Parts 718, 722, 725, and 726 (2002). They are applicable to all claims pending, on, or filed after that date. <u>See</u> 20 C.F.R. §718.101(b)(2001);  20 C.F.R. §725.2(c)(2001). The United States Court of Appeals for the District of Columbia has upheld the validity of the revised regulations. <u>See</u> <u>National Mining Assoc. v. Department of Labor</u>, 292 F.3d 849 (D.C. Cir. 2002).

# Exhibit 2

**U.S. Department of Labor**     Office of Administrative Law Judges
36 E. 7th St., Suite 2525
Cincinnati, Ohio 45202

(513) 684-3252
(513) 684-6108 (FAX)



**Issue Date: 01 August 2006**

```
Case No.  2005-BLA-5708

In the Matter of

JS

     Claimant,

     v.

NATIONAL MINES CORP.,
c/o NATIONAL STEEL CORP.,

     Employer,

     and

OLD REPUBLIC INS. CO.,

     Carrier,

     and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

     Party-in-Interest.

Appearance:[1]
     Thomas W. Moak, Esq.
```

_____

[1] The Director, Office of Workers' Compensation Programs, a party
in this proceeding, was not present or represented by counsel at
the hearing. By failing to appear at the hearing or participate
in this case after referral to this office, the Director is
deemed to have waived any issues which it could have raised at
any stage prior to the close of this record.  By referring this
matter for hearing the District Director is further deemed to
have completed evidentiary development and adjudication as
required by the regulations.  20 C.F.R. § 725.421.

Moak & Nunnery
Prestonsburg, KY
        For the Claimant

John T. Chafin, Esq.
Chafin Law Office
Prestonsburg, KY
        For the Employer

BEFORE:    LARRY S. MERCK
           Administrative Law Judge

## DECISION AND ORDER - DENIAL OF BENEFITS

This case arises from a claim for benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1977 ("Act"), 30 U.S.C. § 901 *et seq.*, and the regulations issued thereunder, located in Title 20 of the Code of Federal Regulations. Regulation section numbers mentioned in this Decision and Order refer to sections of that Title.

On March 31, 2005, this case was referred to the Office of Administrative Law Judges by the Director, Office of Workers' Compensation Programs for a hearing. (DX 27).[2] A formal hearing in this matter was conducted on May 16, 2006 in Prestonsburg, Kentucky, by the undersigned. All parties were afforded full opportunity to present evidence as provided in the Act and the regulations issued thereunder. The opinion which follows is based on all relevant evidence of record.

## ISSUES[3]

The issues in this case are:

---

[2] In this Decision and Order, "DX" refers to the Director's exhibits, "EX" refers to the Employer's exhibits, "CX" refers to the Claimant's exhibits, and "TR" refers to the transcript of the hearing.

[3] The Employer conceded to timeliness, post-1969 employment, miner, responsible operator, most recent period of cumulative employment of not less than one year, and at least eighteen years of coal mine employment. (TR 10). The Employer also maintains issues in 18B for appeal purposes only.

- 2 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION OF WATERFRONT EMPLOYERS, ) ) ) | |
| Plaintiff, ) | |
| and ) | |
| OLD REPUBLIC INSURANCE COMPANY and ASSOCIATION OF BITUMINOUS CONTRACTORS, INC., ) ) ) ) | |
| Plaintiff-Intervenors, ) | |
| v. ) | Civil Action No. 07-2250 (RMC) |
| ELAINE L. CHAO, in her official capacity as the Secretary of Labor, ) ) ) | |
| Defendant. ) ) | |

**[PROPOSED] ORDER**

The Court, having considered Defendant's Motion to Dismiss, and any opposition thereto, finds Defendant's motion to be well-taken.  Defendant's Motion to Dismiss is granted, and this action is hereby dismissed.

IT IS SO ORDERED, this _____ day of _____, 2008.

_____
ROSEMARY M. COLLYER
United States District Judge